## WALLACE A. BARTLETT ET AL. *vs.* GILBERT MOYERS.

*Application to Restrain Use of a Mill Race Because a Nuisance.*

Appeal from a decree of the Circuit Court for Prince George's County (MERRICK.). *Affirmed.*

The appellants are the owners of a tract of land at Highland Station in Prince George's County through which there runs a mill race, intended to supply a grist mill belonging to the appellee. A considerable portion

of the tract is laid out in streets, alleys, parks and lots and a number of lots have been sold and houses erected on some of them. The mill race is supplied with water from a dam erected across the northwest branch and passes through the appellant's property for a distance of half a mile or more. The bill alleges that the defendant's mill had not been in operation to any extent for six years "and for the last two or three years has been absolutely idle, the machinery having gone largely to wreck and the overshot wheels completely decayed and disintegrated;" that the defendant has paid little or no attention to the mill race, and such as he has given it has been to divert it from the purposes of the grant into supplying ponds and lakes with water for the entertainment of himself and his friends. It is then alleged that the plaintiffs' property cannot be made servient to such use; that by reason of the neglect to keep the race in repair and the diversion of it to other uses it has become a nuisance to plaintiffs' property which is being more or less flooded all the time by the water from, through, under and over the race, and that they were not only unable to sell any land bordering on the north side of the race but they were suffering great damage in having acres of their property converted into meadow and swamps, etc. The bill prays for an injunction as follows: "That the said Gilbert Moyers, his servants and agents, may be enjoined and strictly prohibited from committing further waste on said land or any part thereof, and from suffering or allowing the water to pass under, through or over said race in and upon the plaintiff's land, or to remain sluggish or stagnant in said race, except so far as the same may arise from overflow unavoidably caused by the elements when the embankments of the race are kept sufficiently high, broad and solidly built to keep in the water at all ordinary times in ordinary rains, and that the drains under said race may be by him kept open."

The Court said: "The injunction was granted, after which the defendant answered and made a motion to dissolve it. A large amount of testimony was taken and, after hearing, the Court dissolved the injunction

and dismissed the bill. The evidence is very conflicting. Mr. Bartlett, one of the plaintiffs, testified very emphatically as to the condition of the mill race and the great injury the plaintiffs had sustained by reason thereof, and in most respects he fully sustained in his testimony the allegations of the bill. Although he was corroborated by several witnesses in some of the important matters, the defendant flatly contradicted him and the testimony of eight or ten witnesses produced by the defendant tends to show that the condition of the race was exaggerated by the plaintiffs' witnesses. It has been shown beyond all question that the allegations in the bill as to the operation of the mill were not correct. The evidence of the millers, as well as others, shows that the mill had been run almost continuously whenever there was anything to be done, and that, although parts of the machinery were out of repair at times, the condition of the mill was far from that represented in the bill. And there was but little more foundation on which to base a charge that the use of the race had been diverted from the purposes of the grant (supplying the mill) into supplying ponds and lakes for the entertainment of the defendant and his friends. It is true that our conclusions as to these facts would not relieve the defendant from the consequences of permitting his race to become a nuisance and would not of themselves preclude the plaintiffs from relief, but they were alleged in the bill as materially reflecting upon the condition of the race. The learned Judge who granted the preliminary injunction might well have supposed from those allegations that the mill and race had been practically abandoned and wholly neglected by the defendant, except in so far as it was necessary to give attention to the latter for the purpose of supplying the ponds and lakes with water. But no such conclusion can be reached from the evidence in the record. Nor will the evidence justify us in finding that the condition of the race, as claimed by the plaintiffs, was caused by any continuous neglect of the defendant.

"It must be conceded that by reason of muskrats burrowing into the banks, freshets and occasional acci-

dents happening, more or less water has at times flowed on the lands of the plaintiffs from the race, but when all the testimony is carefully considered we are unable to find, as charged in the bill, that the plaintiffs' ' property is being more or less flooded all the time by the water from, through, under and over the race.' A considerable body of plaintiffs' land lying northwest of the race is swampy, but it is impossible for us to say from the testimony that its swampy condition can be attributed to this race or that it has materially affected it. Some of the witnesses acquainted with the land expressed the opinion that the race was in no wise responsible for the swamps and some said that if the race was not there the lands would still be swampy. According to the evidence of the county surveyor, T. H. Latimer, and his son, E. R. Latimer, who made a survey of the race and adjoining lands, a marsh on the south side of the race, which is one of those complained of, is from one to three feet above the level of the water in the race. It is not likely that the race could cause that marsh, and there is testimony tending to show that the swampy condition of the land on the north side of the race is owing to natural causes and not to water leaking out or running over from the race.

" But without deeming it necessary to review at length the testimony of the witnesses, it suffices to say that while it is conflicting, the very decided preponderance is in favor of the defendant on most of the material points and the plaintiffs have not established such a case as would have justified the Court in continuing the injunction, even if it be conceded that the allegations in the bill were sufficient to authorize the original issuing of that writ. Although under existing statutes the line between Courts of Equity and Courts of Law is not as sharply defined as it once was, there is one important rule that should never be departed from, and that is that a Court of Equity must never exercise such an extraordinary power as that of injunction—useful as it is in proper cases—unless the right to it is clearly shown. Applying that rule to the plaintiffs' case, it must follow that the continuance of the injunction was properly re-

fused. The defendant's right to the race is a matter of record and is not questioned—indeed the conveyance under which the plaintiffs' claim the land expressly subjects it " to the servitude of a certain mill race crossing the land herein conveyed," and although the deed granting it contemplates that it shall be kept in reasonable repair and the defendant would be liable to the plaintiffs for a failure to so keep it, there is not enough in this record to enable us to find that he has failed to keep it in such repair as was contemplated by the parties to the original agreement made with reference to the race, so as to justify us in continuing the injunction. That there will be leaks in a race of this kind everybody must know, but the evidence not only shows that the race is well constructed—some witnesses say better than usual—but those whose interests, as well as duty, called upon them to repair the leaks and other injuries to it have sworn that they did so promptly, after discovering them, and that they used due care to keep themselves informed as to its condition. On one occasion the flow of the water in the race was checked by an accident to a bridge over it and the water overflowed the bank and in case of freshets that may happen occasionally. Some trees that were near the race and blew down seem to have caused some leaking and at times when the water was lower than usual, by reason of the dam being broken or injured, a number of leaks were found when the water was raised which were probably caused by muskrats burrowing in the banks. And there would seem to be no doubt that there were times when there was considerable leakage in one way or another, but the evidence does not show such a continuance or frequent flow of water either by leakage or overflow, or such a disregard of the plaintiffs' rights by the defendant, as calls upon a Court of Equity to interfere and thus take supervision over the use of this race by the defendant, which is what it would practically amount to, if the injunction is continued as granted.

If the plaintiffs were right in their contention that the swampy condition of part of this land is owing to the neglect of the defendant, in not keeping the race in

proper repair, they had an adequate and complete remedy at law where such questions can be better tried than in equity, and there is no valid reason why they should not be required to resort to that forum instead of having the extraordinary relief sought in this case. The evidence satisfies us that the defendant's property in this State is ample to meet any damages that the plaintiffs would probably recover, and therefore section 69 of Article 16 of the Code, relied on by them, can furnish no justification for continuing the injunction.

" Being of the opinion that the plaintiffs are not entitled to relief in this case for the reasons we have given, it is not necessary to discuss other questions that have been referred to in the argument, and we will affirm the decree."

Opinion by BOYD, J., filed December 20th, 1898. Recorded in Liber J. F. F. and A. R. No. 1, folio 87 of " Opinions Unreported."

Argued by *Marion Duckett* and *Elbert Dent* for the appellants. *Jos. S. Wilson* for the appellee.